# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Mag. No. 22-11069 |
| v. | Hon. André M. Espinosa |
| HECTOR LUIS DE LA CRUZ NUNEZ, a/k/a Edwin Antonio Nunez Velazquez, EMMANUEL F. ALMONTE MEJIA, EDISON SIME ACOSTA, and LOANNY F. DURAN HICIANO | **CRIMINAL COMPLAINT** |

I, Joseph Czech, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Task Force Officer with the United States Department of Homeland Security, Homeland Security Investigations, and that this Complaint is based on the following facts:

**SEE ATTACHMENT B**

Continued on the attached page and made a part hereof.

_____S/ Joseph Czech_____
TFO Joseph Czech
Homeland Security Investigations

TFO Czech attested to this Complaint
by telephone pursuant to FRCP 4.1(b)(2)(A)
on March 9, 2022 in the District of New Jersey

_____[signature]_____
HONORABLE ANDRÉ M. ESPINOSA
UNITED STATES MAGISTRATE JUDGE

1

## ATTACHMENT A

### COUNT ONE
(Conspiracy to Distribute Controlled Substances)

From at least as early as in or around February 1, 2022 through on or about March 8, 2022, in the District of New Jersey and elsewhere, the defendants,

HECTOR LUIS DE LA CRUZ NUNEZ,
a/k/a Edwin Antonio Nunez Velazquez,
EMMANUEL F. ALMONTE MEJIA,
EDISON SIME ACOSTA, and
LOANNY F. DURAN HICIANO,

did knowingly and intentionally conspire and agree with each other and others to distribute and possess with intent to distribute 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

In violation of Title 21, United States Code, Section 846.

## ATTACHMENT B

I, Joseph Czech, am a Task Force Officer with the United States Department of Homeland Security, Homeland Security Investigations. I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and other items of evidence. Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where statements of others are related herein, they are related in substance and part. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1. Law enforcement has been investigating a drug trafficking organization (the "DTO") operating in New Jersey, New York, Pennsylvania, and elsewhere. During the investigation, law enforcement determined that the DTO runs production facilities, or "mills," in which members work to package large quantities of opioids for distribution. These drugs are then distributed in and around the District of New Jersey. Law enforcement identified a residence in the Eastern District of Pennsylvania (the "Mill") as one such production facility, and determined that once drugs are packaged for sale, a DTO member then transports those drugs to the District of New Jersey.

2. The investigation further revealed that Hector Luis De La Cruz Nunez, a/k/a "Edwin Antonio Nunez Velazquez" ("NUNEZ"), Emmanuel F. Almonte Mejia ("ALMONTE"), Edison Sime Acosta ("SIME") and Loanny F. Duran Hiciano ("DURAN") are all members of the DTO, and utilized the Mill in furtherance of the DTO's activities.

3. Over the past approximately eight days, law enforcement surveilling the Mill observed individuals engaged in activities consistent with preparing the Mill for a shipment of controlled substances. Based on my training and experience, I know that when a heroin mill receives a large quantity of drugs, the individuals involved in preparing these drugs for further distribution often work long hours, rarely leaving the mill, and so those involved in the operation of the mill often prepare by stocking the mill with food, beverages, and places for the mill workers to sleep. Surveillance conducted over the aforementioned time period revealed activity consistent with such preparations. For example, on or about February 28, 2022, law enforcement observed two men arrive at the Mill in a Toyota Sienna (the "Sienna").[1] After conducting counter surveillance

---

[1] Significantly, on or about March 3, 2022, NUNEZ and ALMONTE were stopped by law enforcement, inside the Sienna, which is registered to Nunez. Prior to this stop, both

measures, such as squaring the block numerous times, the men exited the Sienna and carried numerous yellow plastic bags and cases of water from the Sienna into the Mill. It took several trips and approximately ten minutes for the men to unload these materials. Thus, based on my training and experience and the investigation to date, I believe the men were stocking the Mill in anticipation of using the Mill to package a large quantity of narcotics.

4. On or about March 4, 2022, through electronic surveillance, law enforcement observed a man who matches the appearance of DURAN walk towards the rear side door of the Mill, carrying a weighted black duffle bag (the "Duffle Bag"). The Duffle Bag appeared heavy, and the man used one hand to support the bottom of the bag. After he walked up the stairs towards the entrance to the Mill, he placed the Duffle Bag on the railing as he waited to gain entrance. Notably, as the Duffle Bag rested on the railing, it kept its squared-off shape.

5. On or about March 8, 2022, a man, later identified as NUNEZ, exited from the front side door of the Mill, carrying a blue colored bag close to his body as he walked to a Chrysler (the "Chrysler"), which was parked nearby. NUNEZ then entered the driver's seat of the Chrysler, and remained within for several minutes, prior to pulling away from the curb. Based on my training and experience, and the investigation to date, I believe NUNEZ was attempting to access a hidden compartment, or "trap," within the Chrysler. Law enforcement surveilled the Chrysler as it departed from the vicinity of the Mill. After driving off, NUNEZ squared the block, which I recognize as a counter surveillance measure, to determine if he was being followed. Approximately 15 minutes later, NUNEZ returned, carrying what appeared to be an empty large, red duffle bag into the Mill. Approximately 15 minutes after entering the Mill, NUNEZ left, and reentered the Chrysler. He appeared to be carrying a weighted bag as he entered the Chrysler. He departed, and law enforcement tracked and surveilled the Chrysler as NUNEZ drove it into the District of New Jersey.

6. In or around Union County, New Jersey, law enforcement stopped the Chrysler. NUNEZ consented to its search. Further, a canine trained in the detection of controlled substances alerted to the presence of controlled substances within the Chrysler. Pursuant to the search, officers discovered a trap, and found approximately 400 bricks of suspected heroin and fentanyl within, as depicted below:[2]

---

Nunez and Almonte had exited the Mill.

[2] A "brick" is approximately 50 individual doses, or glassines, of heroin, packaged together for sale. An initial field test revealed that the bricks likely held heroin. A



7.  At around the same time as the stop of the Chrysler, officers surveilling the Mill observed the Sienna back out of its garage, and depart. Law enforcement stopped the Sienna and found that DURAN was the operator, and that four other men, to include SIME, were within the Sienna. One of the men ("Individual-1") began to reach toward a yellow plastic bag that resembled the bags that were carried into the Mill on or about February 28, 2022, as described herein. Investigators seized the bag and found that it contained several thousand dollars. A subsequent search of SIME revealed that SIME had in his possession a plastic scooper that I recognized, based on my training and experience, is commonly used by mill workers to insert small quantities of heroin and fentanyl into individual glassines, for further distribution. Thus, based on my training and experience and the investigation to date, I believe that DURAN was attempting to transport mill workers, to include SIME, away from the Mill, after the stop of Nunez.

8.  Further, at around the same time as the stop of the Chrysler, officers also observed ALMONTE exit the Mill. Law enforcement detained ALMONTE and determined that he had the key to the Mill in his pocket, and also had in his possession documents relating to utilities for the Mill, including a bill for the utilities, which were in another individual's name, as well as documentation indicating that in or around October 2021, DURAN had applied for utility services at the Mill.

---

subsequent field test was positive for both heroin and fentanyl.

9. Law enforcement then sought a warrant to search the Mill. Pursuant to that search, law enforcement determined that the Mill was being used to package large quantities of narcotics for sale. To begin, virtually all the windows were covered by what appeared to be black garbage bags, in an apparent attempt to thwart surveillance. Further, law enforcement found large quantities of cutting agents as well as blenders, plastic bags suitable for the packaging of controlled substances, cleaning agents, to include bottles of alcohol, that I recognize, based on my training and experience, can be used to clean an area after it is used for the packaging of narcotics, and green plastic wrap and magazines that matched the packaging of the drugs found within the trap in the Chrysler, as described above. The Duffel Bag, now empty, was also discovered therein.

10. Significantly, in the basement of the Mill, law enforcement discovered a table that appeared to be used to package the narcotics. This table was in the same room as several of the cutting agents and other drug paraphernalia. Seven chairs were found in a closet.